UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CAMAJ,

     Plaintiff,

v.

MAKOWER ABBATE GUERRA
WEGGNER VOLLMER PLLC,

     Defendant.

Case No. 19-cv-10179
Hon. Matthew F. Leitman

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF No. 15)

In 2017 and 2018, the law firm of Makower Abbate Guerra Wegner Vollmer PLLC ("Makower") sent Michael Camaj a series of letters seeking to collect outstanding assessments that Camaj allegedly owed to the Ashley Commons Condominium Association (the "Association"). In this action, Camaj claims that Makower's collection efforts violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") and the Michigan Collection Practices Act, Mich. Comp. Laws §§ 339.901 *et seq.* ("MCPA"). Camaj also asserts several common law tort and contract claims against Makower arising out of Makower's collection activities. Makower has filed a motion to dismiss Camaj's action for lack of subject matter jurisdiction (based upon an alleged lack of Article III standing) and for failure to state a claim.

For the reasons explained below, the Court finds that Camaj has Article III standing but that he has failed to state a viable FDCPA claim against Makower. Accordingly, Makower's motion is **DENIED IN PART** to the extent that it seeks dismissal for lack of subject matter jurisdiction and **GRANTED IN PART** to the extent that it seeks dismissal for failure to state a viable FDCPA claim. The Court **DISMISSES** Camaj's FDCPA claim **WITH PREJUDICE**. The Court declines to exercise supplemental jurisdiction over Camaj's remaining state law claims, and it will therefore **DISMISS** those claims **WITHOUT PREJUDICE** such that Camaj may re-file them in state court.

# I

## A

In or around August of 2017, Camaj held "title" to a parcel of real property within the Ashley Commons Condominium complex. (*See* Sec. Am. Compl., ECF No. 13, PageID.88.) At that time, the Association made and collected assessments to cover certain unidentified expenses. By mid-August of 2017, the Association appears to have determined that Camaj fell behind on his obligations to pay prior assessments.

Makower represents the Association. On August 22, 2017, Makower sent Camaj a letter demanding that Camaj pay outstanding assessments. (*See* 8/22/17 Letter, ECF No. 15-2.) The letter provided:

Re:     Amount Due - $486.80 as of August 22, 2017
        15134 Ashley Court, Macomb, Michigan 48044; Unit 19, Ashley
        Commons Condominium

Dear Mr. Camaj:

Please be advised that this firm represents Ashley Commons Condominium Association. We have been advised by Red Star Equities, LLC that you are delinquent in the payment of your Association assessments and we have been asked to proceed with collection of the delinquent sums.

Please bring your account up to date or call this office to make alternative arrangements. Please make sure payments are made payable to your Association and mailed to our office for proper credit.

Please note that the Amount Due referenced in this letter only includes those amounts owing as of the date of this letter. Assessments and applicable late fees on unpaid assessments that accrue subsequent to the date of this letter will be imposed consistent with the Association's governing documents. Please also note that, at this time, no attorney with this firm has personally reviewed the particular circumstances of your account.

**This firm is a debt collector attempting to collect a debt on behalf of Ashley Commons Condominium Association and any information obtained will be used for that purpose.**

**Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or a copy of a judgment against you and have such verification or judgment mailed to you. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.**

Very truly yours,
MAKOWER ABBATE GUERRA
WEGNER VOLLMER PLLC

*Cheryl Garman*

(*Id.*; emphasis in original.)

Makower then sent three additional collection letters to Camaj: one on October 23, 2017, (10/23/17 Letter, ECF No. 15-3), one on December 18, 2017, (12/18/17 Letter, ECF No. 15-4), and one on January 17, 2018. (1/17/18 Letter, ECF No. 15-5.)  Although there were slight differences in the letters, all demanded the payment of outstanding assessments owed to the Association.[1]

**B**

Camaj filed this action on January 17, 2019. (*See* Compl., ECF No. 1.)  In his Complaint, he alleged that Makower's letters violated numerous provisions of the FDCPA.  More specifically, he claimed that the letters:

- Violated 15 U.S.C. § 1692g by failing "to properly and completely give the validation notice required by 15 USC 1692g";

- Violated 15 U.S.C. § 1692e by threatening "to initiate legal action," failing "to disclose the total amount due in the demand for payment, which included add-on expenses for attorneys fees and collection

---

[1] At oral argument on Makower's motion to dismiss, Camaj told the Court that the 1/17/18 Letter was the only relevant letter for Camaj's FDCPA claim, but that all four letters violated Michigan law.  Yet Camaj's Second Amended Complaint claims that all four letters, not just the 1/17/18 Letter, "violated the FDCPA." (*See* Sec. Am. Compl. ¶¶ 7, 52, 95, 140, ECF No. 13, PageID.85, 90, 95, 100.)

costs," misleading "Plaintiff regarding the law firm's involvement in the collection process," failing "to inform Plaintiff of his rights under state law," sending a letter that was "not reviewed by a lawyer despite being on the law firm's letterhead," and making a "false representation for the amount of the debt";

- Violated 15 U.S.C. § 1692f(1) by attempting "to collect an amount not authorized by the agreement";

- Violated the MCPA by failing "to properly and completely give the validation notice required by MCL 339.918" and falsely threatening litigation in violation of Mich. Comp. Laws § 339.915(e); and

- Constituted common law breach of contract, fraudulent misrepresentation, unjust enrichment, conspiracy for theft, and tortious interference with Camaj's use and enjoyment of title.

(Compl. ¶¶ 21, 24, 26–47, ECF No. 1, PageID.3–7.) Camaj further alleged that Makowers' FDCPA and state law violations caused him to suffer emotional distress. (*See id.* ¶¶ 21–47, PageID.3–7.)

On March 13, 2019, Makower filed its Answer, Affirmative Defenses and Counterclaim. (ECF No. 5, PageID.14–28.) That same day, Camaj filed a First Amended Complaint. (*See* First Am. Compl., ECF No. 7.)

## C

On March 28, 2019, Makower filed a motion to dismiss Camaj's First Amended Complaint under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. (*See* First Mot. to Dismiss, ECF No. 10.) In the

motion, Makower argued that Camaj lacked standing because he "has not demonstrated that he was injured by the alleged FDCPA violations." (*Id.* at 8–9, PageID.61–62.) Makower also argued that Camaj failed to state a claim under the FDCPA because, among other things, he did not plead that the FDCPA applied to the debt Makower tried to collect. Makower highlighted that "Mr. Camaj does not describe the nature of the 'debt' Makower was attempting to collect." (*Id.* at 4, PageID.57.) Makower added that Camaj failed to plead any facts showing that his debt was the type of personal, family, or household debt that is covered by the FDCPA:

> Indeed, Mr. Camaj failed to even allege facts which, if true, demonstrate that the "debt" Makower was attempting to collect was a "debt" under the FDCPA . . . . The FDCPA only applies to efforts to collect debts that were incurred for personal, family or household reasons . . . . Mr. Camaj (on his second attempt) did not plead anything about the "debt" . . . and his case should be dismissed, with prejudice, on this ground alone.

(*Id.* at 14, PageID.67; citations omitted.)

On March 28, 2019, the same day Makower filed its First Motion to Dismiss, the Court granted Camaj an opportunity to file another amended complaint to cure the pleading deficiencies identified in Makower's motion. (Order to Am. Compl. at 2, ECF No. 11, PageID.81.) The Court stressed that this was Camaj's last opportunity to correct the pleading deficiencies noted by Makower:

> Without expressing any view regarding the merits of the motion to dismiss, the Court will grant Camaj the opportunity to file a Second

Amended Complaint in order to remedy the purported . . . pleading defects in the First Amended Complaint. The Court does not anticipate allowing Camaj a second opportunity to amend to add factual allegations that he could include in his Second Amended Complaint. *Simply put, this is Camaj's opportunity to allege any and all additional facts, known to him, that may cure the alleged . . . pleading deficiencies in the First Amended Complaint.*

(Order to Am. Compl. at 2, ECF No. 11, PageID.81; emphasis added.)

## D

Camaj filed his Second Amended Complaint on April 23, 2019. (*See* Sec. Am. Compl., ECF No. 13.) That pleading included certain new allegations related to his standing to bring his claims. But it did not contain a single factual allegation about the nature of the debt that Makower was attempting to collect or how that debt fell within the purview of the FDCPA. More specifically, Camaj did not allege any facts that in any way tended to demonstrate that the debt in question was "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

On May 22, 2019, Makower moved to dismiss Camaj's Second Amended Complaint. (*See* Sec. Mot. to Dismiss, ECF No. 15.) In this motion (now pending before the Court), Makower again argues that Camaj lacks Article III standing because he does not adequately allege that he "suffer[ed] an actual injury traceable to the alleged violations of the FDCPA." (*Id.* at 1–2, PageID.131–32.) And Makower again contends that Camaj fails to state a viable claim under the FDCPA because he does "not plead that that 'debt' was incurred for personal, family or

household purposes, as required to state a claim under the FDCPA." (*Id.* at 14, PageID.144.) Makower further argues that, if the Court dismisses Camaj's FDCPA claim, "the pendant state law claims should also be dismissed, albeit without prejudice." (*Id.* at 2, PageID.132.)

The Court held a hearing on Makower's motion on October 22, 2019.

## II

The Court first addresses Makower's argument that the Court does not have subject matter jurisdiction over this action because Camaj lacks Article III standing.

"Whether a party has standing is an issue of the court's subject matter jurisdiction." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). The "irreducible constitutional minimum" of standing has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting, in part, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff bears the burden of establishing [all three of these essential elements of] standing." *Lyshe*, 854 F.3d at 857.

Camaj has satisfied his burden. First, he has sufficiently alleged that he suffered an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and

particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). Camaj alleges that Makower violated his legally protected interests under the FDCPA by, among other things, wrongfully threatening litigation and falsely representing the amount of the debt that Makower claimed Camaj owed. (*See* Sec. Am. Compl. ¶ 216, ECF No. 13, PageID.109.) And he claims that as a result of these FDCPA violations, he suffered both "emotional distress" (including "anxiety") and "physical symptoms including weakened nails and hair loss." (*Id.* ¶ 224, PageID.110.) These are concrete and particularized injuries. *See Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017) (holding, in the context of a claim under the FDCPA, that emotional distress is a concrete injury sufficient to support Article III standing); *Bartl v. Enhanced Recovery Co.*, No. 16-CV-252, 2017 WL 1740152, at *2 (D. Minn. May 3, 2017) (same).[2] The Court respectfully disagrees with Makower's contention that Camaj has alleged nothing more than a mere procedural violation of the FDCPA. Camaj alleges *both* that Makower violated the FDCPA in the ways

---

[2] *See also Ricketson v. Experian Info. Sols., Inc.*, 266 F. Supp. 3d 1083, 1090 (W.D. Mich. 2017) (holding that emotional distress suffered by plaintiff asserting a claim under the Fair Credit Reporting Act is a sufficiently concrete injury to support Article III standing); *Walker v Fabrizio & Brook, P.C.*, No. 17-11034, 2017 WL 5068340, at *3 (E.D. Mich. 2017) ("The Walkers allege that Fabrizio's publication of their private information caused them mental distress, embarrassment, and damage to their reputation in the community. This is concrete harm.").

noted above *and* that he suffered real emotional and physical consequences.  Camaj has alleged sufficient injuries.

Second, Camaj has sufficiently alleged that his injuries are fairly traceable to Makower's purported violations of the FDCPA.  Indeed, Camaj contends that he suffered his distress "[a]s a result of [Makower's] violations of the FDCPA," and those violations include the alleged wrongful threat of litigation and misrepresentation of the amount of the debt. (Sec. Am. Compl. ¶ 224, ECF No. 13, PageID.110; *see also id.* ¶ 178, PageID.104.)  Makower counters that Camaj's claimed distress was not caused by "any FDCPA violation contained in the letter," but rather was "caused by the letter itself." (Sec. Mot. to Dismiss at 9–10, ECF No. 15, PageID.139–40.)  In Makower's words, "[a]ny effort to collect a debt can cause stress," (Reply at 4, ECF No. 17, PageID.270), and thus Makower insists that Camaj would have suffered the same distress even if the collection letter had been fully compliant with the FDCPA.  But Camaj specifically ties his alleged distress to Makower's FDCPA violations.  He contends that he suffered the distress "as a result" of the "violations," and the Court may not dismiss that contention on the ground that he would have suffered some stress even if the letter had not violated the FDCPA in any way.  Moreover, Camaj's allegations that it was the "violations" that caused the distress is plausible.  While receiving any collection letter may cause

stress, it is reasonable to conclude that receiving a collection letter that falsely represents an amount owing would cause a higher degree of emotional distress.[3]

Third, Camaj's injuries are likely to be redressed by a favorable judicial decision. Such a decision could award Camaj monetary damages to fully compensate him for his claimed distress.

For all of these reasons, the Court concludes that Camaj has Article III standing to assert his FDCPA claims against Makower.[4] Therefore, the Court

---

[3] Makower offers a second argument as to why Camaj has failed to identify an injury traceable to its alleged misconduct. According to Makower, Camaj alleges that the sole cause of his emotional and physical distress was Makower's purported "threat of litigation," and Makower contends that its January 17, 2018, letter did not contain a threat of litigation. Thus, Makower contends, Camaj has not alleged that his claimed distress was caused by an FDCPA violation.

The Court disagrees with this line of argument for two reasons. First, Camaj does not allege that his distress was caused solely by a purported threat of litigation. While he does link his claimed distress to that alleged threat in paragraph 178 of the Second Amended Complaint, he later asserts that all of Makower's alleged violations of the FDCPA, including the false representation of the amount of the alleged debt, caused his distress. (*See* Sec. Am. Compl. ¶ 224, ECF No. 13, PageID.110.) Second, the Court respectfully disagrees with Makower's contention that its January 17, 2018, letter cannot reasonably be read to include a threat of litigation. (*See* Sec. Mot. to Dismiss at 10–11, ECF No. 15, PageID.140–41.) While the letter did not use the words "litigation" or "lawsuit," it threatened to "proceed with further legal remedies" if Camaj did not pay the debt, (1/17/18 Letter, ECF No. 15-5), and that phrase, when used by a law firm, may reasonably be understood as a threat of litigation.

[4] Camaj asserts that he suffered a number of concrete injuries in addition to the emotional and physical distress identified above. The Court does not reach those additional injuries because it has concluded that the distress Camaj allegedly suffered is a sufficient injury to support standing.

**DENIES** Makower's motion to dismiss Camaj's FDCPA claims for lack of subject matter jurisdiction.

**III**

The Court next addresses Makower's contention that Camaj has failed to state a viable FDCPA claim.

**A**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id.* (citing *Twombly*, 550 U.S. at 556). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).

"While the complaint need not contain 'detailed factual allegations,' it must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Boxill v. O'Grady*, 935 F.3d 510, 517 (6th Cir. 2019) (quoting *Iqbal*, 556 U.S. at

678). A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## B

### 1

Camaj's FDCPA claim fails because he did not plead that the FDCPA applies to the debts at issue. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for *personal, family, or household purposes*." 15 U.S.C. § 1692a(5) (emphasis added). In order to determine whether a condominium assessment falls within this statutory definition, a court must examine "the purposes that the [owner] ha[d] for purchasing the [unit] . . . at the time of the [original purchase] transaction." *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 294 (6th Cir. 2012). If the condominium owner originally bought the unit for personal, family, or household purposes, then a subsequent assessment by the condominium association is a "debt" for purposes of the FDCPA. *Id*. Thus, in *Haddad*, the Sixth Circuit held that a condominium association assessment was a "debt" under the

FDCPA because the owner originally "purchased the condominium for personal usage and lived there for fifteen years." *Id.*[5]

Here, Camaj does not plead a single fact related to the purpose for which he purchased his condominium, and he does not allege that he ever lived in the condominium. Moreover, he does not allege any facts related in any way to whether the assessments that Makower was seeking to collect were "for personal, family, or household purposes." Indeed, Camaj does not even allege in a conclusory fashion – in a way that parrots the language of the FDCPA's definition of "debt" – that the assessments were "for personal, family, or household purposes." His amended complaint ignores entirely the purposes underlying the assessments. Thus, he has failed to allege that the assessments are "debts" that are covered by the FDCPA, and his claim under that Act fails as a matter of law. *See Thomas v. Daneshgari*, 997 F. Supp. 2d 754, 764 (E.D. Mich. 2014) (holding that plaintiff's FDCPA claim "fails as a matter of law" because plaintiff did not sufficiently allege that "the underlying debt is not related to 'personal, family, or household purposes'"); *Whittiker v. Deutsche Bank Nat'l Tr. Co.*, 605 F. Supp. 2d 914, 928 (N.D. Ohio 2009) (holding

---

[5] *See also Beeks v. ALS Lien Servs.*, No. 12-2411, 2014 WL 7785745, at *4–6 (C.D. Cal. 2014) (following *Haddad*, explaining that a condominium association assessment qualifies as an FDCPA debt "if the [owner] purchased the condominium in order to live in it," and holding that a particular assessment qualified as an FDCPA "debt" because plaintiff alleged that she purchased the unit "for her personal use" and then lived in the unit for several years before renting it out).

that the plaintiff's failure to allege that the debt was incurred primarily for personal, family, or household purposes was "fatal" to plaintiff's FDCPA claim).

**2**

Camaj counters that a condominium association assessment, by its very nature, is *always* "for personal, family, or household purposes," and thus the FDCPA *necessarily* applies to *every* effort to collect such an assessment. From this, Camaj concludes that he did not need to plead any facts showing that the particular condominium association assessments that Makower sought to collect were "for personal, family, or household purposes." The Court disagrees.

Camaj contends that the Sixth Circuit's decision in *Haddad*, *supra*, establishes that *all* condominium association assessments are "for personal, family, or household purposes" and are thus always covered "debts" under the FDCPA. But *Haddad* indicates the opposite – that not every condominium assessment is necessarily a covered "debt" under the FDCPA. Indeed, as noted above, the Sixth Circuit in *Haddad* concluded that a condominium association assessment was an FDCPA "debt" only after confirming that the condominium owner purchased the unit as a family home and lived in the unit for many years. *Haddad* cannot be reconciled with Camaj's argument that a condominium association assessment is necessarily and always a "debt" under the FDCPA. Simply put, if Camaj was correct, there would have been no need for the Sixth Circuit in *Haddad* to consider

whether the owner actually purchased the condominium for personal, family, or household purposes.

Camaj offers an alternative reading of *Haddad*. He notes – correctly – that the Sixth Circuit "adopt[ed] the analysis" of condominium association assessments used by the Seventh Circuit in *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477 (7th Cir. 1997). *Haddad*, 698 F.3d at 293. And Camaj says that *Newman* establishes that such assessments are always "debts" under the FDCPA.

The Court does not share Camaj's reading of *Newman*. In *Newman*, the Seventh Circuit first held that whether a condominium association assessment qualifies as a "debt" under the FDCPA must be judged based upon the purpose for which the condominium was originally purchased. *Newman*, 119 F.3d at 481. The Seventh Circuit then held that the assessments at issue were for "personal, family, or household purposes" and thus were "debts" under the FDCPA because the condominiums were purchased as "family homes." *Id.* Then, as the Sixth Circuit explained in *Haddad*, the Seventh Circuit went on to "suggest[] that the [condominium association] assessments themselves qualify as 'personal, family, or household' purposes, *to the extent that they are used for household and common-area improvements and maintenance*." *Haddad*, 698 F.3d at 293 (quoting *Newman*, 119 F.3d at 481–82) (emphasis added). Thus, *Newman* confirms that a condominium association assessment is neither inherently nor always for "personal,

family, or household purposes." Instead, under *Newman*, a condominium association assessment may qualify as an FDCPA "debt" where either the owner purchased the unit as a personal residence or where the assessments are used for household and common-area improvements and maintenance.

Here, as noted above, Camaj does not plead a single fact about the purpose for which he originally purchased his condominium nor about the uses to which the Association put the assessments it levied and collected. Thus, even under *Newman,* he has failed to sufficiently allege that the assessment that Makower sought to collect was a "debt" under the FDCPA. *See Baird v. ASA Collections*, 910 N.E.2d 780, 787 (Ind. Ct. App. 2009) (holding that homeowners association assessment was not an FDCPA "debt" under *Newman* because plaintiff presented no evidence that she ever used land in development as a personal residence).

Because Camaj has failed to allege that the assessments Makower was attempting to collect were "debts" under the FDCPA, the Court will dismiss all of Camaj's FDCPA claims against Makower.

## IV

Camaj has not filed a motion for leave to file a Third Amended Complaint, and he did not request leave to amend in his response to Makower's motion to dismiss the Second Amended Complaint. But even if Camaj had properly moved for leave to amend, the Court would have declined to allow Camaj to amend his

complaint for a third time. While leave to amend should be "freely give[n] *when justice so requires*," Fed. R. Civ. Proc. 15(a)(2) (emphasis added), justice does not require that Camaj be permitted to file a Third Amended Complaint.

Camaj has already been given a full and fair opportunity to address the deficiency in his FDCPA claim, and he failed to take advantage of that opportunity. As described above, when Makower moved to dismiss Camaj's First Amended Complaint, Makower highlighted that Camaj had failed to allege that the assessments Makower sought to collect were for personal, family, or household purposes and were thus "debts" covered by the FDCPA. (*See* First Mot. to Dismiss at 4, 14, ECF No. 10, PageID.57, 67.) The Court then gave Camaj a chance to address this deficiency, told him to plead all facts known to him that would cure the deficiency, and informed him that it would likely not allow him to amend again to add factual allegations that he could have included in the Second Amended Complaint:

> The Court does not anticipate allowing Camaj a second opportunity to amend to add factual allegations that he could include in his Second Amended Complaint. Simply put, this is Camaj's opportunity to allege any and all additional facts, known to him, that may cure the alleged (1) subject-matter jurisdiction defect and (2) other pleading deficiencies in the First Amended Complaint.

(Order to Am. Compl. at 2, ECF No. 11, PageID.81.)

In the amendment permitted by the Court (the Second Amended Complaint), Camaj did not add a single allegation concerning the nature of the assessments

Makower was attempting to collect nor whether those assessments were for personal, family, or household purposes. Instead, Camaj stood pat on his originally pleaded claims. Makower then had to re-assert its attack on Camaj's "debt" allegations in its renewed motion to dismiss, and Makower had to prepare and present oral argument concerning the insufficiency of those allegations. Likewise, the Court spent hours (1) reviewing the arguments concerning the sufficiency of Camaj's "debt" allegations, (2) carefully studying *Haddad*, *Newman*, and the case law construing and applying those decisions, (3) considering the parties' arguments concerning the "debt" allegations during the hearing on Makower's motion to dismiss, and (4) drafting the portions of this Opinion and Order addressing the "debt" allegations. Thus, Camaj's failure to take advantage of the opportunity to attempt to cure his "debt" allegations imposed real costs on Makower and led to a substantial expenditure of judicial resources.

Under these circumstances, leave to amend yet again – to correct deficiencies that were plainly highlighted for Camaj prior to his last amendment – is properly denied. Simply put, justice would not be served by granting Camaj a third "do over." Moreover, Camaj is not "entitled to an advisory opinion from the Court informing [him] of the deficiencies of [his] complaint and then [yet another] opportunity to cure those deficiencies." *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784

19

(6th Cir. 2000) (quoting and affirming district court order denying leave to amend complaint).

In one of this Court's prior cases, *Wysong Corp. v. APN, Inc.*, 266 F. Supp. 3d 1058 (E.D. Mich. 2017), the Sixth Circuit confirmed that denying leave to amend under the circumstances presented here is a proper exercise of discretion under Rule 15. In *Wysong*, the defendants moved to dismiss the plaintiff's complaint, and, as in this case, the Court gave the plaintiff an opportunity to amend to correct the pleading deficiencies identified in the motion. The plaintiff filed an amended complaint, but it did not take advantage of the opportunity to cure a key defect that the defendants had identified in the motion to dismiss. This Court held that the defect was fatal to plaintiff's claims, and the Court denied leave to amend because the plaintiff had failed to cure the defect when directly given the opportunity to do so. On appeal, the Sixth Circuit held that this Court's "reasons were sufficient to justify denial of leave to amend," and that court affirmed the denial of leave to amend. *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 273 (6th Cir. 2018). The Sixth Circuit explained that because the plaintiff failed to take advantage of the opportunity "to add facts and context that might nudge its complaints across the plausibility threshold," "the district court did not abuse its discretion by refusing another bite at the apple." *Id.*

As in *Wysong,* even though Rule 15 embodies a liberal policy in favor of permitting amendments, *see, e.g.*, *Tucker v. Middleburg-Legacy Place*, 539 F.3d

545, 552 (6th Cir. 2008), the Court declines to grant Camaj leave to file a Third Amended Complaint. Accordingly, Camaj's FDCPA claims in the Second Amended Complaint are hereby **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**.

## V

A district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court has "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Pinney Dock & Transport co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (quotation marks omitted). Having dismissed Camaj's sole federal claim – and the only claim that forms the basis of this Court's original subject matter jurisdiction – the Court declines to exercise supplemental jurisdiction over Camaj's state law claims. Those claims are most appropriately adjudicated by a state court.

Accordingly, Camaj's remaining state common law and statutory claims are hereby **DISMISSED WITHOUT PREJUDICE**.

## VI

Therefore, for all of the reasons stated above:

- Makower's motion is hereby **GRANTED IN PART**,

- Camaj's FDCPA claims are hereby **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**, and

- Camaj's remaining state law claims are hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 14, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 14, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764